**In re MOUNT VERNON PLAZA COMMUNITY URBAN REDEVELOPMENT CORPORATION I.**

Joint administration with:

**In re MOUNT VERNON PLAZA COMMUNITY URBAN REDEVELOPMENT CORPORATION II, Mount Vernon Plaza Community Urban Redevelopment Corporation III, Bryden Road Plaza, Inc., Debtors.**

Bankruptcy Nos.
2–86–03789—2–86–03791, 2–86–03788.
EIN 31–1112220.

United States Bankruptcy Court,
S.D. Ohio, E.D.

Aug. 21, 1987.

See also, Bkrtcy., 79 B.R. 305.

Alec Wightman, Baker & Hostetler, Columbus, Ohio, Fred J. Milligan, Jr., Westerville, Ohio, for Adrian Co.

Grady L. Pettigrew, Jr., Arter and Hadden, Columbus, Ohio, for Flowers.

James H. Banks, Columbus, Ohio, for Bell.

Janice Franke, Legal Aid Society, Columbus, Ohio, for Tenants.

Jerry Grier, Columbus, Ohio, for HUD.

Joseph C. Winner, Murphy, Young & Smith, Columbus, Ohio, for Creditors Committee.

## ORDER OVERRULING OBJECTION TO CONFIRMATION (BELL FACTION OF BOARDS OF TRUSTEES)

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court upon an objection to confirmation of the Plan of Reorganization proposed by The Adrian Company, subsequently modified to become a plan of reorganization jointly proposed, not only by Adrian, but also by the Flowers faction of the boards of trustees of Mount Vernon Plaza Community Urban Redevelopment Corporations I, II and III and Bryden Road Plaza, Inc. (the "Plan"). The objection was filed by Gladys Bell, Estelle Porter and Elminie Rickman (the "Bell faction"), asserted members of the boards of trustees of the debtor corporations, and was heard by the Court.

The Bell faction's objection to confirmation falls into four major categories: (1) issues relating to authority and jurisdiction; (2) issues relating to the omission from the Plan of a related corporate entity, Neighborhood Development Corporation; (3) the feasibility of the Plan; and (4) alternative courses of action available to the debtors. For reasons set forth below, the Court finds the objection to be without merit.

This case has been marked from its onset by deep personal rifts among members of the governing boards of trustees of these non-profit corporations. Since the case was transferred to this Judge, significant court time has been spent hearing of the need for professional management of the highrise apartments, family units and commercial spaces which comprise the primary physical assets of the debtors. Following the appointment of a managing agent, by agreement of the parties, the Court has supervised that agent, primarily because the board factions are unable to communicate or cooperate with one another. Because of certain frictions, the adversary action seeking a declaratory judgment as to the proper composition of the boards, now in active trial, has also required greater than average court intervention in the pretrial process.

These events are mentioned only as background relevant to understand the context of the objection. The objection also requires the Court to focus upon the statutory process under the Bankruptcy Code by which a non-debtor entity is permitted and encouraged to propose and seek confirmation of a plan of reorganization, independent of actions by the debtors, outside a 120–day exclusive period within which only the debtors may propose a plan. 11 U.S.C. § 1121.

The jurisdiction of this Court cannot seriously be questioned. To commence what is now a jointly administered case, four voluntary petitions under Chapter 11 of the Bankruptcy Code were filed with this Court on September 26, 1986. At that time, jurisdiction of the Court was invoked pursuant to 28 U.S.C. § 1334(a). Indeed, there is no

other Court which would have bankruptcy jurisdiction over these matters. While the split among the members of the boards of trustees has impacted upon the abilities of the debtors to govern themselves during the pendency of these cases, nothing has occurred to divest this Court of the jurisdiction invoked by the initial filings.

Following a lengthy trial on motions filed by the Bell faction and by the Mount Vernon Highrise Residents' Council of Mount Vernon Plaza Community Urban Redevelopment Corporation I, the parties reached a settlement which provided for the appointment of a managing agent. The agreement setting forth that settlement was approved by the Court on April 24, 1987. Section 3.1 of that settlement agreement provides, with certain nonapplicable exceptions and subject to § 3.2, that:

> "[t]he Flowers faction shall continue to operate as representatives of the debtors and debtors in possession in each of the above captioned cases until further order of the Court. As representatives of the debtors and debtors in possession, the Flowers faction shall have all rights and duties resulting from such status under the Bankruptcy Code and Rules and other applicable law that they had prior to the entry of this order ...
> § 3.2. The Flowers faction as representatives of the debtors and debtors in possession, as well as the debtors and the debtors in possession themselves, hereby waive the exclusive right to propose, file and/or seek confirmation of a Plan of Reorganization in each of the above captioned cases. However, the Flowers faction may, as representatives of the debtors or debtors in possession, propose, file, and seek the confirmation of a Plan of Reorganization in any of the above captioned cases on behalf of debtors and debtors in possession."

The Court finds that the sections of the Order set forth above, agreed to by the representative of the Bell faction, clearly and unambiguously authorize the Flowers faction to join in the proposal of a plan of reorganization. Such provision also effectively waives any issue of the authority of

that faction to proceed with the confirmation process. The Bell faction was also eligible, pursuant to the preservation of its rights and duties under the Bankruptcy Code as set forth in other provisions of that settlement agreement, to propose its own plan of reorganization or to join forces with a third party for that purpose. In fact, it has done exactly that in a recent plan filed with the Court. That a viable proposal first has been brought forward by the Flowers faction is, therefore, not a matter of which the Bell faction may properly complain. Accordingly, objections to the jurisdiction of this Court or the authority of the Flowers faction to act in this regard are overruled.

■ The next issue raised by the Bell faction's objection relates to the propriety of omitting Neighborhood Development Corporation ("NDC") from the Plan. Under the Articles of Incorporation of the debtors, NDC is the sole member of each corporation within the provisions of Ohio Revised Code, § 1702.13. The objection asserts not only that NDC must be included by virtue of that membership, but also that the five corporations are but one entity insofar as creditors are concerned.

The Court finds that, although NDC is a separate non-profit corporation which is not part of the Plan submitted for these related debtors, the Plan proposes payment for many of NDC's creditors. Specifically, any creditors of NDC which provided money, goods or services for the properties owned and operated by these debtors are to be paid in full from the cash proceeds of the sales of those properties contemplated by the Plan. The Plan anticipates that all currently existing unsecured creditors of NDC will be paid in this matter. The Plan also proposes to pay approximately $250,-000 to the Ohio Housing Finance Agency, a creditor of NDC which holds mortgages against various properties owned by NDC. Holders of other secured claims against NDC have been or are being paid through sales of the properties to which their liens relate or by abandonment of the properties to the lienholders. Claims arising from NDC's involvement with the operation of

the Singletary Plaza are not proposed to be paid under the Plan of these debtors.

The Court finds further that all creditors of NDC were given notice of the confirmation hearing and were served copies of the Amended Disclosure Statement and Plan of these debtors. None have complained of their exclusion. In addition, the Court believes that, as a matter of law, the creditors proposed not to be paid under the Plan would have no right to look to the assets of these debtors for payment of their obligations. There is no evidence any of them provided goods or services to these debtors or in any way relied upon the assets or credit-worthiness of these debtors. Simply because one substantial creditor, which performed construction services for these debtors under a contract with NDC, has been able to look to the resources of all the entities for repayment does not indicate that all of NDC's creditors are similarly situated. Accordingly, the Court finds that the failure of the joint proponents of the Plan to include NDC in their Plan or to provide for repayment of all NDC's creditors, regardless of the basis for such claims, is without legal significance and is not an impediment to confirmation.

██ The Bell faction has also challenged the feasibility of the Plan, which, as proposed, provides that Shiloh–Grove, Ltd. ("Shiloh–Grove"), a newly formed Ohio limited partnership, will purchase the assets of the debtors for $18,000,000 or the appraised value of the debtors' assets, whichever is higher. Shiloh–Grove will have three general partners: The Adrian Company, Shiloh—A City Set On a Hill ("Shiloh"), and Union Grove Church Organization Incorporated ("UGCO"). Reliance upon the financial resources of Shiloh or UGCO is not contemplated by the Plan. Shiloh's limited partners will most likely be investors from an institutional financial organization utilizing funds from entities for whom investments of this nature are sought to provide certain tax benefits. Low income housing tax credit authority in the amount of $817,500 has conditionally been reserved by the Ohio Housing Finance Agency for application to the contemplated purchases if the Plan is approved by this Court and the proposed purchases receive the approval of HUD. It was also the testimony of representatives from Miller & Schroeder, investment bankers ("Miller"), that the probability of obtaining such investment is very high, given the fewer incentives for favorable tax treatment for real property investments resulting from recent amendments to the Internal Revenue Code.

As further support for feasibility of the Plan, Miller has performed an economic feasibility analysis of the Plan's provisions. Miller's representative testified as to the existence of blind pools with available funds which have interest in the specific type of project represented by the debtors' properties. Miller's estimate is that only 30–90 days will be required to conclude the purchases contemplated by the Plan, and that the probability of such closings prior to the end of 1987 is very high. Although the financial success of the proponents is not, and cannot be assured, the Court is convinced that the economic feasibility of the Plan is greater than that of most plans of reorganization presented to this Court. The interested institution is one of good reputation, other viable parties exist, and the time within which the transactions are likely to occur is relatively short.

In addition to the financial arrangements and the limited partnership agreement, Shiloh–Grove and Adrian, Inc., the managing arm of The Adrian Company, have entered into an agreement pursuant to which The Adrian Company, by its related entity Adrian, Inc., will actively manage the properties and have authority to make certain decisions. That agreement sets forth policies for those decisions which are consistent with Congressional intentions relating to the operations and goals of federally assisted "Model City" properties such as those of the debtors. At the end of the initial two-year period, the governing board of Shiloh–Grove becomes vested in a board of 7 with 4 from Shiloh, 1 from The Adrian Company and 2 from UGCO. It has also been agreed that if the governing board constituted after that initial period determines not to rehire Adrian, Inc. as the manager of the

real properties, some other professional managing agent, approved by The Department of Housing and Urban Development ("HUD"), will be chosen. While these matters are not especially relevant to the economic feasibility of the Plan within the meaning of 11 U.S.C. § 1129(a)(11), they serve to address feasibility in a larger social sense evidenced by the concerns of some of the parties and of this Court that the sale of the debtors' properties will keep intact, as much as possible, the social aspirations of that model community, preserve local control over its development, and provide for significant involvement by organizations which are active in the black community of Columbus, Ohio. Insofar as it is possible to predict, the Plan appears to satisfy most of those concerns.

Finally, the objection of the Bell faction raises the issue of alternative courses of action open to the debtors as reason to disapprove the Plan. Specifically, the assertion is made that a sale may not be necessary, that such a sale frustrates the purposes of Chapter 11, and that another Plan has been filed by the Bell faction. None of those reasons, however, are appropriate or sufficient as a matter of law. 11 U.S.C. § 1123(a)(5)(D). Reorganization clearly contemplates sales of all or part of debtors' assets. So long as a proposed plan satisfies the tests for confirmation set forth in 11 U.S.C. § 1123(a) and § 1129, the Court does not decide if the Plan is correct in proposing a sale. That process is one which is generally negotiated and accepted by creditors. This Plan has been accepted overwhelmingly by creditors of the debtors, including the Official Creditors Committee in Mount Vernon Plaza Community Urban Redevelopment Corporation I, and meets all tests for confirmation. That the Bell faction's plan might also meet such tests, were that process to continue to unfold, is not reason to delay confirmation of this Plan nor impose control of that process by the Court. As an irrelevant but curious aside, it appears that the Bell faction's proposal, which also contemplates a sale, largely tracts the Plan before the Court.

Consistent with the foregoing, the objection to confirmation filed by Gladys Bell, Estelle Porter, and Alminie Rickman shall be, and the same is, hereby, OVERRULED. The Court will proceed to confirm the Plan upon submission by the Joint Proponents of an appropriate order of confirmation. Such order shall set forth, restated in correct form, the final wording of Paragraph 8 of Article V of the Joint Amended Plan of Reorganization.

IT IS SO ORDERED.